Collier on Bankruptcy ¶ 67.37 at 534 (14th ed. 1978) states the following:

> Where the transferee or obligee is in a position to dominate or control the bankrupt's disposition of his property, however, his intent to hinder, delay, or defraud creditors would seem sufficient to render the transfer or obligation fraudulent within § 67d(2)(d) without respect to the purpose of the bankrupt transferor.

Thus *Southern Land Title* was concerned only with fraudulent intent on the part of either party where the transferee, as was alleged in *Southern Land*, is in a position to dominate or control the bankrupt.

In the present case the Bankruptcy Court specifically found that IBM was not in a position to dominate or control the disposition of the bankrupt's property. Appellant has not sought to challenge this finding. Accordingly, we conclude that *Southern Land Title* provides no support to Appellant's claim that fraudulent intent on the part of either the transferor or transferee requires the transfer to be set aside.

The decision of the District Court upholding the Bankruptcy Court's dismissal of Appellant's complaint is affirmed. The costs of this appeal are assessed against William B. Tanner Co., Inc., the appellant.

**L. E. SAUER MACHINE COMPANY, INC., Plaintiff-Appellant,**

v.

**CORRUGATED FINISHING PRODUCTS, INC. and Shadeland Manufacturing Company, Inc., Defendants-Appellees.**

Nos. 79–2509, 80–1086.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1980.

Decided Feb. 23, 1981.

Rehearing Denied July 8, 1981.

**204**

Edward H. Renner, St. Louis, Mo., for plaintiff-appellant.

William S. Ayres, Indianapolis, Ind., Mark C. Schaffer, Toledo, Ohio, David McNamar, Indianapolis, Ind., for defendants-appellees.

Before BAUER, Circuit Judge, WISDOM, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

WISDOM, Senior Circuit Judge.

This is a patent infringement suit. After trial the district court found the plaintiff's patent invalid for obviousness and entered judgment for the defendants. We reverse.

The patent in question is No. 3,522,754, issued to Louis E. Sauer and entitled "Reinforced Freewheeling Resilient Cover for Rotary Die-Cutting Anvil". It describes a device used in making corrugated containers—cardboard boxes, in plain words. The first step in boxmaking is to cut the paperboard stock into the proper shape and size according to the dimensions of the box desired. This cutting is done by passing the paperboard under a rotating wheel on which are mounted knife-like dies. When the dies cut through the paperboard they must have something against which to strike, in the same way that a cook needs a cutting board when slicing carrots. This function is served by another metal wheel below the paperboard, called an anvil. Because the dies would quickly become blunt if they struck against a steel surface, the anvil is covered with a rubbery polyurethane strip that fits around the anvil like a tire around a car wheel. This strip, called an anvil cover, is the subject of the present dispute.

When the rotary cutting method first came into use, anvil covers were bonded directly to the metal anvils. When the constant cutting action wore out the cover, the entire anvil had to be replaced and the old anvil returned to the factory for recovering. The first major improvement in the design was a separate, removable anvil cover which could be replaced fairly easily in the boxmaker's own factory. The anvil

---

* Honorable John Minor Wisdom, Senior Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

cover was still mechanically fixed in place relative to the anvil, however. Hence, the cutting dies tended to strike the cover at the same fixed points over and over, quickly wearing out the cover. The next step, then, was to find a way to allow the cover to rotate freely (or "freewheel") around the circumference of the anvil, thereby spreading wear evenly over the whole outer surface of the cover. Before the patent in question came out, the industry used a solution to this problem embodied in an earlier patent, No. 3,724,873, issued to the same inventor ("the old Sauer patent"). This old design featured an anvil cover with two T-shaped ribs running longitudinally around its inner circumference. The ribs fitted into corresponding T-shaped slots on the anvil circumference. *See* figure 1. The ribs and slots allowed the cover to freewheel but prevented it from slipping sideways or flying off the anvil entirely. The ends of the anvil cover were square; they fit flush against each other when the cover was installed, but they were not fastened or joined in any way..

The solution still had a major flaw, however. Anvil covers, when slightly worn, invariably warp into a bow shape. This causes the T-ribs to jam in their slots, preventing freewheeling. *See* figure 2. Again it was Sauer who solved this problem. He designed an anvil cover with U-shaped ribs in place of the T-shaped ones. *See* figure 3. The U-ribs do not jam in their slots, so the cover continues to freewheel even after it warps. Because the ribs no longer serve to keep the cover from flying off the anvil when it spins, however, it is necessary to fasten its ends together with lugs and recesses or some other joining device. This innovation increases the life of anvil covers by a factor of ten or more. Moreover, it makes it possible to replace a cover in a matter of seconds, without removing the anvil from the rotary cutting machine. Not surprisingly, Sauer's U-ribbed design has

had great commercial success: substantially all anvil covers now sold feature U-ribs and joined ends.

The patent at issue in this case ("the new Sauer patent") covers this new design.[1] It describes the combination of U-shaped rib and groove with joined ends as a method of allowing freewheeling. It also specifies a particular form of end joint: a lug-and-recess design that fits together like the pieces of a jigsaw puzzle. The lugs have concave surfaces while the recesses have convex surfaces, so that the jigsaw-like fit works in all three dimensions.

L. E. Sauer Machine Co., the present holder of the new Sauer patent, brought this suit against Corrugated Finishing Products, Inc. and Shadeland Manufacturing Co. for alleged infringements of that patent. Corrugated and Shadeland denied infringement and contested the validity of the patent. The district court held the patent invalid for obviousness under 35 U.S.C. § 103 (1976) and entered judgment for the defendants.

Section 103 provides that

> A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The question of patent validity, including the element of nonobviousness, is one of law. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784, 790 (1976); *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 556 (1966). The Supreme Court has described the "basic factual inquiries" relevant to that determination:

1. Claims four through twelve of the patent relate to the U-rib and joined-end design. Claims one through three describe an entirely different solution to the problem—rigid reinforcement bars running from edge to edge of the cover.

The reinforcement design aims to prevent or retard warping, whereas the U-rib design aims to allow freewheeling despite warping. It was stipulated that claims one through three of the patent are not at issue in this suit.

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. . . . Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. *Graham,* 383 U.S. at 17–18, 86 S.Ct. at 693–94. *See* 2 A. Deller, Deller's Walker on Patents § 106, at 75 (2d ed. 1964); Note, Subtests of "Nonobviousness": A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964). A patent is presumed to be valid, and the burden is on the defendants to establish its invalidity. 35 U.S.C. § 282 (1976).

We hold that the district court erred in finding that the defendants have overcome that statutory presumption in this case; the court did not give sufficient weight to the innovation achieved in Sauer's new design. The evidence discloses two prior patents having to do with freewheeling anvil covers: the old Sauer patent, and a French patent, No. 1,347,752. The former teaches the T-rib design described above. The French patent teaches the feasibility and desirability of a freewheeling anvil cover, as opposed to one fixed to the anvil, but it does not purport to patent any particular technique for permitting freewheeling. The design example in the French patent features a dovetail rib-and-slot method similar in principle and operation to the T-rib design. Both teach the use of a rib of arbitrary shape to preserve lateral and radial stability while allowing circumferential motion; neither solves the

warping and jamming problem inherent in the arbitrary rib technique. The innovation of the new Sauer patent is to split the rib's two functions—that is, to use the rib and slot only to keep the anvil cover from slipping off sideways (lateral stability), and to rely instead on a new feature (joined ends) to prevent the cover from flying outward (radial stability). The new design thus eliminates the key feature of the old designs—the arbitrary-shaped rib—because it jams after short use. "[W]here the parts of the prior art device must be discarded in order to get to the patented invention, then such art does not make the invention obvious under [section 103]." *Uarco Inc. v. Moore Business Forms, Inc.,* 440 F.2d 580, 585 (7th Cir.), *cert. denied,* 404 U.S. 873, 92 S.Ct. 91, 30 L.Ed.2d 117 (1971); *see Ortman v. Maass,* 391 F.2d 677, 682 (7th Cir. 1968). Like many inventions, the new design is not an astonishing breakthrough or a new technology; nevertheless, it is a significant, non-obvious improvement on prior art. "[S]ometimes achievement is revolutionary, but more often an inventor begins where others leave off, and perceives the vital forward step to which predecessors have been blind." *Trabon Engineering Corp. v. Dirkes,* 136 F.2d 24, 27 (6th Cir. 1943).[2] The courts must take care not to conclude that an innovation is obvious because it has become obvious by hindsight. *Research Corp. v. Nasco Industries, Inc.,* 501 F.2d 358, 361 (7th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974); *Erie Technological Products, Inc. v. Die Craft Metal Products, Inc.,* 461 F.2d 5, 9 (7th Cir. 1972); *Walt Disney Productions v. Fred A. Niles Communications Center, Inc.,* 369 F.2d 230, 234–35 (7th Cir. 1966).

Moreover, the huge commercial success of the new Sauer patent since its intro-

---

2. It may also be true that the improvement includes "nothing new", in the sense that neither joined ends on a belt nor U-shaped ribs and grooves are new engineering concepts. In a sense, though, nearly every invention can be reduced to a combination or packet of old, known things. "All the constituents may be old, if their new concourse would not 'have been obvious at the time the invention was

made to a person having ordinary skill in the art'." *Reiner v. I. Leon Co.,* 285 F.2d 501, 503 (2d Cir. 1960), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961), quoting § 103; *see Reeves Instrument Corp. v. Beckman Instruments, Inc.,* 444 F.2d 263, 270–71 & n.4 (2d Cir.), *cert. denied,* 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971).

duction dispels any doubts we may have as to its obviousness. *See Graham*, 383 U.S. at 17–18, 86 S.Ct. at 693–94. Commercial success and similar secondary indicia alone cannot establish patentability in the absence of invention. *Sakraida*, 425 U.S. at 282–83, 96 S.Ct. at 1537–38; *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 975–76 (7th Cir. 1979); *Panduit Corp. v. Burndy Corp.*, 517 F.2d 535, 541 (7th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). Here, however, this factor speaks with force. The new design brings about a tenfold improvement in anvil cover life. Besides the obvious economy in replacement costs of the covers, this works a considerable savings by greatly reducing the time that cutting machines must be shut down for replacement of their anvil covers. That it is no minor improvement is easily seen in the rapidity and completeness with which it has displaced prior art. None of its present users thought to adopt it before Sauer did.

The district court apparently concluded that the statutory presumption of validity does not apply to the new Sauer patent because the Patent Office overlooked relevant prior art. *Republic Industries*, 592 F.2d at 972–73; *Centsable Products, Inc. v. Lemelson*, 591 F.2d 400, 402 (7th Cir. 1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1980); *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378, 382–83 (7th Cir. 1972); *Henry Manufacturing Co. v. Commercial Filters Corp.*, 489 F.2d 1008, 1013 (7th Cir. 1972). We cannot see, however, how any of the six patents referred to by the district court render Sauer's invention obvious.

One of the supposed prior art patents is French Patent No. 1,347,752, discussed above. That patent teaches nothing not revealed in the old Sauer patent, which the Patent Office did consider. We concluded above that neither patent teaches anything to make the subject matter of the new patent obvious.

The other five cited patents deal with methods of joining the ends of the cover similar to Sauer's lug-and-recess technique.

The argument here is that the idea of a lug-and-recess joint with matching concave and convex surfaces is obvious in light of the unconsidered patents. We need not decide whether this contention is correct, however, for even if it is, it does not invalidate the entire new Sauer patent. The several claims of a patent are not connected in series, like a string of old-fashioned Christmas lights; unpatentability of one particular detail does not invalidate the others where those others would stand as patentable innovations if the offending claim were stricken. Here, the main focus of the patent at issue is on a new technique for freewheeling: the combination of a U-shaped rib with joinder of the cover ends. The particular type of end joint is unimportant; any connection will serve the purpose so long as it holds together adequately. The inventor, after stating the need for some kind of end joint, went further and described a particular one. Supposing that the described joint is obvious, however, it does not taint the patentability of the concept of U-rib-plus-joined-ends as a freewheeling technique. The specification of a lug-and-recess joint is, at worst, surplus detail, in the same way that it would be surplus detail to stipulate that the new anvil cover should be red.

We REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion. We decline to reach the issue of infringement because the district court made no findings or conclusions on the issue. In view of this disposition we need not address the plaintiff's contention that the district court's finding of obviousness is overinclusive.

Figure 1

208

Figure 2

Figure 3