**DICAR, INC., Plaintiff,**

v.

**L. E. SAUER MACHINE COMPANY, INC., Defendant.**

**Civ. No. 81–3029.**

United States District Court, D. New Jersey.

Jan. 4, 1982.

Carella, Bain, Gilfillan & Rhodes, P.A. by John G. Gilfillan, III, Newark, N.J., for plaintiff.

Stryker, Tams & Dill by Robert J. Del Tufo, Newark, N.J., Rogers, Eilers & Howell by Edward H. Renner, St. Louis, Mo., of counsel, for defendant.

## OPINION

BIUNNO, District Judge.

The defendant, L. E. Sauer Machine Company, Inc. (Sauer) claims to be the patentee of U.S. Patent No. 3,522,754 (the '754 patent) issued August 4, 1970 on the application of Louis E. Sauer (inventor) filed August 14, 1967.

The patent is on improvements to cylinders of resilient plastic (such as polyurethane) which are placed, as sleeves, over round metal cylinders called anvils, in machines used to cut corrugated cardboard to make boxes. The cylindrical sleeve is called an anvil cover, and its purpose is to provide a surface against which rotary knives may work as they cut the cardboard.

The metal anvil itself rotates on a shaft, but, as explained at oral argument the geometry of the rotary knives and the anvil is such that the knives move slightly faster. This is probably due to the design of the system to have the knives press slightly into the resilient anvil cover. In order to avoid cutting wear on the anvil cover, as well as to avoid the impregnation in it of cutting debris, the anvil cover is made "free-wheeling" so that it can move with the knives and against the surface of the rotating anvil, thus avoiding being cut into.

At one time, anvil covers were fixed to the anvil, and without the freewheeling feature they wore out relatively rapidly. Their replacement involved shutting down the machine and reduced productivity.

Since the free-wheeling cover is loose around the anvil, means must be provided to prevent it from sliding off the anvil laterally. Under an earlier Sauer patent, No. 3,274,873 (the '873 patent) means to prevent lateral sliding was provided by having two inverted T-shaped ribs formed along the inner circumference of the anvil cover, to fit into similarly shaped grooves in the anvil itself. As explained at oral argument, this design required the anvil itself to be divided into two halves along its axis. Thus divided each half of the anvil cover was installed by sliding the T-shaped ribs into the grooves of one half of the anvil, which was then reassembled.

While this is said to have been an improvement, it did not fully achieve the free-wheeling feature in use because with use and some cutting into the surface of the anvil cover, its outer surface between the lines of the ribs tended to bulge, and this caused the ribs to bind in their grooves and interfered with the free-wheeling action.

The '754 patent outlined two ways to prevent binding. One way was to incorporate corrugated material near the inner surface of the anvil cover and across the ribs. This stiffened the resilient material and prevented bulging and binding.

The other method was to substitute a plain rib and U-shaped groove for the T-shaped ribs and grooves. Since the T-shaped rib had also served to hold the split cover on the anvil, and since the plain rib had no similar means, this method involved making the cover as a single sheet that could be wrapped around the anvil (the ribs fitting into the grooves), with each end cut in the form of long, rounded dovetails with convex fingers at one end fitting into concave spaces between fingers at the other end, and vice-versa.

In Fig. 1 of the '754 patent, 24 and 26 are the two halves of the anvil 22, while 32 and 34 are the two halves of the anvil cover 30, for the T-rib system. In Fig. 10 of the '754 patent, the curved dovetail system used to close the cover around the anvil is shown for the plain rib system.

Sauer sued Corrugated Finishing Products, Inc., and Shadeland Manufacturing Company in the U.S. District Court for the Southern District of Indiana, claiming infringement of the '754 patent. After trial, the District Judge decided that the claimed patent was invalid as obvious in light of the prior art, see 207 U.S.P.Q. 993 (D.Ind., 1979). On appeal, this disposition was reversed and the matter was remanded for further proceedings, see *L. E. Sauer Machine Company, Inc. v. Corrugated Finishing Products Inc.*, 642 F.2d 203 (CA 7, 1981). As noted there, the suit did not involve the claims dealing with improvements on the T-rib design (Claims 1, 2 and 3, as mentioned in footnote 1 of the opinion on appeal), and neither court dealt with the issue of infringement.

The papers filed here indicate that a pre-trial order was entered October 16, 1981 based on a conference held August 28, 1981. Trial is set for March 8, 1982, and it is indicated that two new parties have been added: a company called "Delaware Corporation", and a company called "Corfine, Inc.," as to whom an amended complaint was to be filed. It also appears that Corfine, Inc. filed a motion to vacate the order joining it as a party. See Exh. D to Sauer's Supplemental Memorandum here.

The papers filed here indicate that Sauer also has a separate infringement suit in the Indiana District against "Dovey Corp.".

At oral argument, it was stated that neither the Corrugated nor the Dovey suits involved any product of Dicar's, and that Dicar had not provided a defense to any party in either suit.

On September 21, 1981, Sauer filed an infringement suit in the U.S. District Court for the Northern District of Illinois, against Triangle Die and Supply Co., claiming infringement of the '754 patent on claims 4 through 12, being Docket 81C5301. On September 24, 1981, Dicar filed the present suit here, seeking a declaratory judgment that the '754 patent is invalid, and that it is not infringed by Dicar's anvil covers.

The complaint here, as well as discovery taken of Triangle in the Illinois suit and the

affidavit of its chairman, Joseph P. Marovich, assert that Triangle is a manufacturer's sales representative for Dicar, with a territory confined to Illinois, Wisconsin, Minnesota, Iowa and parts of Indiana and South Dakota.

It is said that Triangle makes no sales. It solicits orders, or receives unsolicited orders, which are routed to Dicar which ships directly to and invoices the customer without any further participation by Triangle. Triangle receives a 15% commission on Dicar sales in its territory without regard to whether the routing of an order is through Triangle or not. Many such orders are solicited directly by Dicar from customers.

An affidavit of Dicar's president, Alan D. Kirkpatrick, asserts that Triangle is one of Dicar's smaller sales representatives, having sold some $30,000 of product over the period 1978 through 1981 (to December 14th), on which it received commissions of some $4,500. He also states that Dicar is not participating in the suit against Triangle, nor funding or controlling it, and that it has not agreed to indemnify Triangle.

After Sauer was served with the summons and complaint in this declaratory judgment case, it moved for an order to dismiss for lack of *in personam* jurisdiction, or to quash process for lack of adequate or proper service. This motion is no longer pressed.

Sauer also moved to transfer the suit, under 28 U.S.C. § 1404(a), for the convenience of parties and witnesses and in the interests of justice, to the District of Illinois court where the Triangle suit is pending. Alternatively, on the theory that its suit against Triangle was filed first, it moved to stay the present suit until the Triangle suit is decided.

Dicar meanwhile moved for an order to enjoin Sauer from further prosecuting the suit against Triangle in the Northern District of Illinois. This motion was noticed for return on January 11, 1982, but at the oral argument of the Sauer motion, it was agreed that all the pending motions should be heard and decided together.

On December 21, 1981, the court signed an order denying with prejudice Sauer's motion to dismiss for alleged lack of *in personam* jurisdiction, or to quash the service of process. This is the motion no longer pressed.

The order also denied Sauer's motion to transfer or to stay, without prejudice to renewal after the completion of discovery.

Disposition of Dicar's motion to enjoin further prosecution of the Sauer/Triangle suit was reserved pending completion of a statement of reasons on all the motions. Sauer's responding pleading was directed to be filed on or before January 11, 1981, and discovery was ordered not to be duplicated here for any matters discovered in the Northern District of Illinois. Discovery of Dicar was ordered to be conducted in New Jersey, while that of Sauer was ordered discovered in Missouri.

*Present facts*

On the record now before the court, and without implying any adjudication of them, the following appear to be the facts.

Sauer is a Missouri corporation with its only place of business in St. Louis. It not only owns the '754 patent but also manufactures and sells anvil covers of a free-wheeling type coming within Claims 4–12 of the patent (i.e., with the U-rib and groove, of one piece and with the ends snapped together). It sells these products nationwide to users of machinery employing such anvil covers.

Dicar is a New Jersey corporation, with its only place of business here. It, too, makes and sells free-wheeling anvil covers but claims they are of a different design than Sauer's, being made under its own patents, Nos. 4,073,207 and 4,073,208 (the '207 and '208 patents), both issued February 14, 1978. These are sold to customers throughout the country, both directly and via manufacturer's representatives such as Triangle.

In the Dicar design, called Anvilok III, the anvil cover or blanket is a single length of material wrapped as a cylinder and held together tightly in compression by a clamp

located underneath the butted ends. Instead of clamping the cover or blanket directly on to the anvil itself, however, it is clamped to a "split ring", actually a split hollow cylinder, which fits around an anvil head fashioned with a tapered flange at each end much like a common wooden spool to hold thread. The free-wheeling feature arises from the ability of the split ring to slide around the anvil. Lateral movement is prevented by the tapered flanges or shoulders. The cover or blanket itself does not slip in the Dicar design, but is firmly clamped (and evidently slightly stretched).

█ The validity of the Sauer '754 patent was sustained by the decision of the Court of Appeals for the Seventh Circuit as reported, 642 F.2d 203 (CA 7, 1981) against parties not connected with Dicar. That ruling is not binding on Dicar, which is free to litigate the issue itself, and may be able to produce additional prior art to show obviousness, or that the invention was on sale more than one year before the Sauer application, or any other ground available for challenge.

Had the decision of the District Court in Indiana stood, that finding of invalidity for obviousness would have barred Sauer from suing any other party for infringement under the doctrine of *Blonder-Tongue v. U. of Ill. Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Since Sauer was eventually successful (as to the U-shaped ribs), however, it must be ready to re-litigate patent validity and infringement as to those not party, or who did not provide a defense to the first action.

Thus, Sauer's successful first suit is neither res judicata, nor does it give rise to collateral estoppel against either Dicar, or Triangle, or any other of Dicar's manufacturer's representatives or customers. To the extent that other competitors than those who were party are believed to be infringing the '754 patent, Sauer must either persuade them to negotiate a license or cease infringement, or must sue for infringement if negotiations fail. In either case, the successful prosecution of the first suit provides a bargaining advantage, and a strong argument, even though not binding.

On the other hand, alleged infringers not party to the first suit may be able to establish invalidity on their own trial record, or may be able to show non-infringement. If the subject field is one with an old and developed art, the scope of even a valid patent may be very narrow and circumscribed, and competitors may have little difficulty in making products based on old art, or combinations of old art, or other improvements thereto, that do not infringe the Sauer '754 patent.

For instance, the cover or blanket might conceivably be made as an endless loop, larger than the anvil, and held in place against lateral movement by a pair of bars or rollers, one at each end of the anvil. Such devices have long been common for machines using endless belts that are moved at high speeds, such as Fourdrinier wires, or felts, on paper-making machines to prevent "throwing the belt".

Or, since the mass and inertia of the anvil prevents its movement to respond to slight forces, as mentioned at oral argument, another approach might be to redesign the anvil itself by making it hollow and of light metal.

Rollers, flanges, idler wheels, slip clutches and other such mechanisms are also long known and used in devices for handling long flexible strips, such as motion picture film, magnetic tapes, or the like, and may be readily adaptable to the kind of machines involved here.

In sum, a later infringement suit against a party not bound by the successful prosecution of the first one may present entirely different questions of fact and law and may arrive at a different result.

*The Venue Question*

█ On the facts now of record, Sauer cannot sue Dicar for infringement anywhere except in the District of New Jersey. This is due to the special venue provision of 28 U.S.C. § 1400(b). The point is settled, and binding on this court, by the decisions in *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026

(1942); *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); and *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961).

*Brunette Machine Works, Ltd. v. Kockum Industries Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) is neither to the contrary nor does it imply a change in the view of earlier cases because it involved an infringement suit against an alien, as to whom there would be no applicable venue provision despite adequate jurisdiction unless 28 U.S.C. § 1391(d), itself a special venue provision, was applied.

An unusually pertinent case is *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). In that case, Blaski sued Howell in a federal court in Texas where they both resided and had their only place of business, for infringement of a patent. The defendants moved for transfer under 28 U.S.C. § 1404(a), to the Northern District of Illinois, where several other actions were pending on the same patents, and said that if the transfer were made they would waive venue objections and enter appearances, see footnote 2, 363 U.S. at 336, 80 S.Ct. at 1085. The transfer was ordered over Blaski's objection and a writ of mandamus was denied by the Fifth Circuit Court of Appeals.

After transfer, Blaski moved in the Illinois District Court to return the case to the Texas District Court on the ground that the suit could not have been brought in the Illinois court in the first instance, and so could not be transferred there. The District Court denied the motion "with misgivings", but on petition for a writ of mandamus, the Seventh Circuit Court of Appeals reversed. The Supreme Court affirmed.

Thus, so far as an infringement suit by Sauer against Dicar is concerned, the law is clear that on the facts of record the only proper venue for such a suit is in this district under 28 U.S.C. § 1400(b), and Dicar cannot be compelled to defend such a suit elsewhere. Whether the constraints of the statute are wise or desirable is a matter for the Congress.

Venue for a declaratory judgment suit challenging the validity of another's patent is not governed by the special venue statute. If there be only diversity jurisdiction, venue is governed by § 1391(a). Where there is some other ground for jurisdiction, as where there is a federal question as well as diversity (which is the case here), § 1391(b) governs. That allows venue only in the district where all defendants reside, or in which the claim arose, except as otherwise provided by law (see, e.g., 28 U.S.C. § 1397, Interpleader).

Thus, the observation by Judge Maris, in *Crosley Corp. v. Westinghouse, etc.*, 130 F.2d 474, at 476 (CA 3, 1942), to the effect that a patent declaratory judgment suit can only be brought in the district of which the defendant is an inhabitant, is no longer the law. This is because of the 1966 amendments to § 1391(a) and (b) allowing venue where the cause of action arose, as well as because of the 1948 addition of § 1396(c), fixing the residence of a corporation sued as being within any district in which it is doing business, for venue purposes. Both these changes were made after the *Crosley* decision.

*Crosley* somewhat resembles the present suit in some respects. Westinghouse was a Pennsylvania corporation holding refrigerator patents it charged were infringed by Crosley, an Ohio corporation. Crosley filed a declaratory judgment patent suit against Westinghouse in the Western District of Pennsylvania (its "home" district). One day later, Westinghouse sued Crosley for infringement in the Southern District of Ohio (its "home" district).

The Court of Appeals here reversed a district court order staying prosecution of its own suit and denying a restraint against the Ohio suit. This was on the ground that:

> "In patent cases, therefore, the district courts may decline jurisdiction of a suit brought in good faith to obtain declaratory relief only if it appears that the *same parties and issues* are involved in another suit previously begun, or that in another suit subsequently begun involving the

*same parties and issues* the questions in controversy between the parties can be better settled and the relief sought by them more expeditiously and effectively afforded than in the declaratory proceeding." 130 F.2d at 475 (emphasis added).

Here, the earlier suit by Sauer against Triangle is not between the same parties as in the declaratory suit. The "other suit" to a declaratory action involving a patent can only be an infringement suit, and here that suit by Sauer against Dicar can only be brought in this district. In fact, Sauer's claim for infringement is no doubt a mandatory counterclaim under Rule 13(a) since Dicar cannot be compelled to become a party to the Illinois suit against Triangle. Also, the venue for an independent suit against Dicar for infringement would be in this district only.

This analysis is consistent with the decision in *Kerotest v. C–O–Two, etc.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Although the court there observed that:

"The manufacturer who is charged with infringing a patent cannot stretch the Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart. If he is forehanded, subsequent suits against him by the patentee can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit. If he is anticipated, the court's discretion is broad enough to protect him from harassment of his customers."

It also said, immediately thereafter,

"If the patentee's suit against a customer is brought in a district where the manufacturer cannot be joined as a defendant, the manufacturer may be permitted simultaneously to prosecute a declaratory action against the patentee elsewhere. And if the manufacturer is joined as an unwilling defendant in a forum non conveniens, he has available on an appropriate showing the relief provided by § 1404(a) of the Judiciary Code, 62 Stat. 869, 937, 28 U.S.C. § 1404(a)."

The questions discussed in the first part just quoted can arise only when the alleged infringer is subject to a suit for infringement in more than one district, i.e., where there is more than one district coming within the strictures of 28 U.S.C. § 1400(b).

■ The observations made in the second part just quoted apply here. Sauer sued Triangle in Illinois and cannot sue Dicar there. This leaves Dicar free to prosecute its declaratory action against Sauer here. In fact, as between Sauer and Dicar, Dicar has filed its declaratory action before Sauer filed an infringement action against Dicar. Had Sauer sued Dicar for infringement in this district, Dicar would have been obliged to seek declaratory relief by way of mandatory counterclaim here. Otherwise, it could, had it chosen to, have filed its declaratory action first in the Missouri district.

*Venue transfer*

Aside from what has appeared above in the discussion of *Crosley* and *Kerotest,* the subject of transfer in the specific context of the present case has been dealt with in only a few cases, none in this circuit.

*William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177 (CA 2, 1969) is credited as having developed an exception to the "first-filed" rule in patent litigation, where the first suit is by the patentee against a mere customer of the manufacturer, and the later one is for declaratory judgment by the manufacturer of the accused product against the patentee. Another exception stated in *Gluckin* is when forum shopping alone motivated the choice of situs for the first suit.

In *Gluckin,* the court gave priority to the second filed suit because (1) the accused manufacturer was really the primary party; (2) it sold its products to customers nationwide; (3) all the witnesses resided in and around New York; (4) the principal place of business of all the parties was New York; and (5) many of the patentee's records were in New York.

The Court of Appeals for the First Circuit has made a like analysis in *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (CA 1, 1977).

As here, the patentee sued a customer for infringement in Kansas, and the manufacturer of the accused product sued the patentee for declaratory judgment 35 days later in Massachusetts. After the district court denied a motion for transfer, stayed the Massachusetts suit until the Kansas suit ended, and sub silentio denied an injunction to enjoin the Kansas suit, the Court of Appeals reversed.

After analyzing all the factors, the court ruled that:

"In these circumstances, while we do not say that there should be an inflexible rule, we would recognize a rebuttable presumption that a manufacturer's declaratory judgment action, in its home forum, at least if brought no later than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued." 553 F.2d at 738 (footnotes omitted)

There, as here, the patentee had successfully litigated its patent against an unrelated infringer in the other district, and had recently filed suit there against another unrelated infringer. These considerations were not seen as sufficient to carry the day against factors pointing in the other direction.

In *Emerson Electric Co. v. Black and Decker, etc.*, 606 F.2d 234 (CA 8, 1979), the Court of Appeals for the Eighth Circuit, while endorsing the views expressed in *Gluckin* and *Codex*, arrived at a different result in the case before it on its own facts, and affirmed the transfer of a later suit by an accused manufacturer against the patentee to another district where the patentee had first sued a customer for infringement.

The differences between the *Emerson* case on the one hand, and the *Gluckin* and *Codex* cases on the other are mainly that: (1) the accused manufacturer sold its product to the customer sued, and was paying the cost of its defense under an indemnification agreement, and thus would be bound by the outcome there in any event under *Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); (2) three other defendants named in the second declaratory action were not within the reach of Missouri's long-arm statute and the action had to be dismissed as to them; (3) the customer was a large national retailer in a position to have allegedly infringing products made for it by any of a number of manufacturers, and it was therefore important to sue the customer itself; (4) in addition to the patent dispute, there were issues involving similar trademarks.

The present case is very much like *Codex*, and quite unlike *Emerson*. It also has unique circumstances of its own. As noted above, Dicar obtained its own '207 and '208 patents nearly 4 years ago. The inventor is in this district. Doubtless, both Dicar and Sauer will be keenly interested, not only in the issues of infringement and validity about the '754 patent, but also in the validity of the '207 and '208 patents and in the question whether their practice, even though considered an improvement, may infringe the '754 patent during its remaining life.

Except in very rare cases where an existing patent embraces the only known means for achieving a desired result, patent holders are not entitled to be free of competition as such. Competing products employing known art in the public domain, as well as those employing different means and methods under other patents, are all entitled to their effort to achieve acceptance in the marketplace. Public domain devices may be "good enough" for some users and cheaper than a "better" patented product. One patented product may be more suitable to the needs of a given customer than another.

Here, the prime parties in interest are Sauer and Dicar. Triangle, on the present record, is not even a customer but only a sales representative who has earned a few thousand dollars in commissions from 1978 on.

No doubt, there is a customer or two of Dicar's in this district, and a sales representative as well, just as there must be customers and sales representatives elsewhere in the country. Nothing has been shown, as it was in *Emerson*, to indicate any particular importance to bringing suit against Triangle other than its presence in Illinois, within the Seventh Circuit where Sauer's patent was held valid in an action out of Indiana. This was not regarded as a sufficient reason in *Codex*, and it is not regarded as a sufficient reason here.

The motion to transfer or to stay the present action will accordingly be denied at this time and on the present record. The denial is without prejudice to renewal after discovery is complete, as it is often more prudent to wait until that stage to consider the question again on a fuller record. The order to avoid multiple discovery will protect against the risks of needless expense and delay.

If the transfer motion is presented again, the parties should be aware that the only transfer which the court now regards as feasible would be to the Eastern District of Missouri, Eastern Division, which sits in St. Louis. The Northern District of Illinois has no particular focus to the issues here, while the Missouri district is Sauer's home district, and one where Dicar could have filed its declaratory judgment suit, and in which Sauer could have counterclaimed for declaratory judgment in respect to the '207 and '208 patents. That district, like this one, could be uniquely suited to resolve all the potential issues between the primary parties. The point is by no means closed, but the parties should have the benefit of the court's present impression.

*The injunction issue*

The question whether Sauer's suit against Triangle should be allowed to proceed or not is a perplexing one. On the one hand, Sauer is doubtless entitled to sue alleged infringers, even contributory ones, in whatever districts may be of proper venue. Under 28 U.S.C. § 1400(b), the Northern District of Illinois appears to be the only district for an infringement suit against Triangle.

On the other hand, that suit does seem to be of little importance in light of the dual judicial burden it will impose, and so will have the vexatious effect typical of multiple litigation.

This by no means implies that there was any vexatious purpose to the suit. Quite the contrary. It is obvious that the Triangle suit had the purpose of seeking to draw Dicar into it, at least to the extent of providing a defense so as to be bound by the result even though not a party. The court sees no impropriety in seeking to litigate in a court within the same circuit which had upheld the '754 patent against another. That decision would no more be binding against Triangle or Dicar there than it would be here, but it could be an "edge" on the opposition at least for some issues. It would be bad business judgment not to have made the effort.

In the court's view, after careful deliberation, the effort has failed, probably due to inadequate information about Triangle and its relationship to Dicar. If, instead, the suit had been against a large Dicar customer able to secure anvil covers from any of a number of manufacturers, as in *Emerson*, the court's view might have been different.

As it is, however, the court sees no point to having the Illinois court try the Triangle case when the primary parties are here to litigate not only the '754 patent but the '207 and '208 patents as well.

Enjoining Sauer from further prosecution of the Triangle suit will not deprive it of its right to sue alleged infringers. If Sauer is successful against Dicar here, Triangle will no longer handle infringing Dicar anvil covers. And, since Triangle receives merely a commission, damages otherwise recoverable from Triangle can be dealt with in an accounting by Dicar through the simple method of disallowing commissions as an expense. Unless Sauer seriously intends to sue all of Dicar's sales representatives, some such mechanism would be needed in any event.

For these reasons, the injunction sought by Dicar, on which disposition was reserved, will be granted.

The court is of the view that this aspect of the determination is not contrary to the appellate views expressed in *Crosley*, because the parties in Illinois are not the same as here, and that it is within the discretion spelled out in *Kerotest*, in the second part quoted above, because the first suit was against a sales representative (not even a customer) in a district where Dicar could not be sued and because there ought to be one suit on all issues, not two or more.

In fact, where the suit for infringement is against a customer of an accused manufacturer, in a district where the manufacturer cannot be sued for infringement, and the manufacturer promptly thereafter files a declaratory judgment suit against the patentee, the declaratory judgment suit may well be regarded as the first filed suit since it will be the first one between the primary parties. Thus, a decision by the patentee to sue a customer instead of the accused manufacturer amounts to being first to cross the wrong goal line, like Roy Riegal's famous run on the glad New Year.