**POWER LIFT, INC., Appellee,**

v.

**LANG TOOLS, INC. and Wendell Lang, Appellants.**

**Appeal No. 85–777.**

United States Court of Appeals, Federal Circuit.

Oct. 7, 1985.

E. Harrison Gilbert, III, Laney, Dougherty, Hessin & Beavers, Oklahoma City, Okl., argued, for appellants. With him on brief were William R. Laney and C. Clark Dougherty, Jr., Oklahoma City, Okl.

Clifford A. Jones, Bradford, Haswell & Jones, of Oklahoma City, Okl., of counsel.

Jerry J. Dunlap, Dunlap & Codding, Oklahoma City, Okl., argued for appellee. With him on brief was Gary Peterson, Oklahoma City, Okl.

Before RICH and BENNETT, Circuit Judges, and MILLER, Senior Circuit Judge.

RICH, Circuit Judge.

This appeal is from the March 15, 1984, final judgment of the United States District Court for the Western District of Oklahoma, entered on a jury verdict, finding that Lang Tools, Inc. (Lang Tools), infringed Power Lift, Inc.'s (Power Lift) U.S. patent No. 4,305,467 ('467) entitled "Blow-out Preventer Lift System and Method," issued to Douglas F. Villines' assignor, Power Lift, and that Wendell Lang (Lang) actively induced Lang Tools infringement of the '467 patent. Moreover, the jury found that Lang Tools' infringement was willful. We affirm the judgment in all respects.

*Background*

The jury rendered a verdict in the form of answers to 7 interrogatories, after 9 days of trial, that Lang Tools had willfully infringed the '467 patent and that Wendell Lang had actively induced that infringement. The jury verdict included "lost profits" damages in the amount of $229,655.00.

The trial court entered judgment in accord with the jury verdict on March 15, 1984. Judgment *nunc pro tunc*, increasing the prejudgment interest award, was entered April 25, 1984, and an amended judgment, adopting the jury's findings on willfulness and finding the case to be exceptional and awarding attorney fees under 35 U.S.C. § 285, was entered October 5, 1984.

Subsequent to the initial judgment, Lang Tools and Lang filed a motion for judgment notwithstanding the verdict (JNOV) and, in the alternative, a motion for new trial. The motion for JNOV was directed to several issues including: (1) lost profits; (2) active inducement of infringement by Wendell Lang; and (3) claim validity. The new-trial motion was directed to these three issues as well as to inequitable conduct, infringement, and willfulness. These mo-

tions were denied by the trial court in an order entered October 5, 1984.

### Invention

The invention is directed to a device utilized to lift equipment, such as a blow-out preventer, during oil and gas well drilling operations. The device is placed on the drilling rig platform and attaches to the equipment to be raised through a central aperture in the platform's rotary table.

During drilling operations, equipment located at the mouth of the well sometimes needs to be raised toward the underside of the drilling platform. For example, a blow-out preventer, which weighs many tons, needs to be raised a short distance in order to service the well bore casing to which the blow-out preventer is connected.

### OPINION

#### JNOV

As a preliminary matter, Power Lift argues that Lang Tools improperly included the issues of lost profits and claim validity in its motion for JNOV, alleging that those issues were not first raised by Lang Tools in its motion for directed verdict at the close of the evidence as required by Rule 50(a), Federal Rules of Civil Procedure.

■ On review of the relevant motions submitted by Lang Tools to the trial court, we find Power Lift's allegations correct. Accordingly, under Rule 50(a) Lang Tools has waived its right to challenge the court's denial of JNOV on the same issues.

While Lang Tools has waived its right to a particular *standard* of appellate review, it has not waived its right to appellate review. Lang Tools may, as it did in this case, seek review of the trial court's denial of its motion for a new trial on those same issues.

■ As to the factual finding of inducement raised in the motion for JNOV, our review is by the substantial evidence standard. Under this standard, the facts are analyzed to determine if the findings are reasonable or, if reasonable, are the legal

conclusions supported by such findings. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 221 USPQ 473 (Fed.Cir.1983).

### 35 USC 271

#### I

In the court below, judgment was entered against Lang Tools and Lang, individually. Lang is president, founder, majority owner, and director of Lang Tools.

Lang was not sued for direct infringement individually under § 271(a) and the case against Lang was tried to the jury and court solely on the theory that Lang induced Lang Tools to infringe the '467 patent under § 271(b).

Lang moved for directed verdict, JNOV, and, in the alternative, for a new trial on the ground that, as a matter of law, he could not have induced Lang Tools to infringe the '467 patent. The motions were based on the premise that a corporation, which can act only through its officers and agents, cannot be said to have been "induced" by its officers to do certain acts.

Lang, on appeal, alleges:

It is fundamental that in order for a person to incur liability under Section 271(b), he must actively induce *another* to infringe the patent. The common meaning of the word "induce" permits no other interpretation. The legislative history characterized Section 271(b) as including the concept of aiding and abetting infringement. . . .

. . . .

The essence of the problem is that Wendell Lang's actions as an officer of Lang Tools, Inc. are the actions of Lang Tools, Inc. in law and therefore cannot be said to actively induce infringement of the Villines patent by *another*. Liability premised on such a notion would in effect be liability for self-inducement, a meaningless concept. In order to induce active infringement by another, there must be two separate entities. A corporation and its president do not, in law, constitute separate entities for purposes of statutes requiring multiple actors.

Lang respectfully submits that an interpretation of § 271(b) which permits such a finding is erroneous as a matter of law and that the district court erred in allowing this issue to go to the jury.

## II

█ The purpose of section 271 was to "codify in statutory form principles of contributory infringement and at the same time eliminate ... doubt and confusion. Paragraph (b) recites in broad terms that one who aids and abets an infringement is likewise an infringer." S.Rep. No. 1979, 82nd Cong., 2d Sess., at 9 (1952). In a similar vein, Mr. Federico commented that "Paragraph (b) is a broad statement and enactment of the principle that one who actively induces infringement of a patent is likewise liable for infringement." P.J. Federico, *Commentary on the New Patent Act*, 35 U.S.C.A. 1, 53 (1954). These comments suggest a "broad" reading of § 271(b) which, in our view, may include liability of corporate officials who actively aid and abet their corporation's infringements. *See, e.g.*, D. Chisum, *Patents* § 16.06[2] at 16–76 (1984); *White v. Mar-Bel, Inc.*, 509 F.2d 287, 292–93, 185 U.S.P.Q. 129, 132–33 (5th Cir.1975) (officer was "moving force which resulted in the manufacture of the accused device"); *International Manufacturing Co. v. Landon, Inc.*, 336 F.2d 723, 728–29, 142 U.S.P.Q. 421, 425–26 (9th Cir.1964) (officer or "alter ego" was "moving, active conscious force behind [corporation's] infringement" and "is therefore subject to personal liability without regard to whether [the corporation] is his alter ego"); *Bewal, Inc. v. Minnesota Mining & Manufacturing Co.*, 292 F.2d 159, 167, 129 USPQ 440, 446 (10th Cir.1961) (corporate officer "aided, participated in, approved, ratified and induced" infringement by corporation).

Lang has failed to persuade the court that such a broad legal interpretation of § 271(b) by the district court was error, or that the jury finding that Lang actively induced his corporation to infringe was not supported by substantial evidence.

### Motion for New Trial

█ As to the jury's factual findings raised in the motion for new trial, our scope of review is by the abuse of discretion standard, whereby the jury's factual determinations are reviewed to determine if they are against the weight of the evidence or if there has been clear error. 5A Moore's *Federal Practice* ¶ 50:13 (2d ed. 1982); *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 607, 222 USPQ 654, 657 (Fed.Cir.1984).

█ We do not, as suggested by Lang Tools, review the denial of the motion since it is not a final judgment. Rather the only reviewable *final judgment*, over which this court has jurisdiction, is the trial court's judgment entered on the jury verdict. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1511, 220 USPQ 929, 934 (Fed.Cir.1984).

After a thorough review of the evidence before the jury, we hold that the jury's factual determinations, in the form of answers to special interrogatories, were neither against the weight of the evidence nor was there clear error. Accordingly, the jury's factual determinations on all the issues are upheld.

### Willfulness

The following factual outline, although not completely agreed to by the parties, is a fair representation, in our view, of this case.

Wendell Lang based his lift system on inspection of the Power Lift blow-out preventer system which was already in field use. His son, Darrell Lang, was seen measuring the width of the Power Lift winches and drums. Lang Tools then designed and built its blow-out preventer system, without knowledge of the '467 patent application, before November 1980. While not identical to Power Lift's system, it was based thereon.

Subsequently, Power Lift filed the Villines patent application on its lift system July 14, 1980, and amended its application

in April 1981 to add subsequently issued claim 15, allegedly the only claim which covers Lang Tool's lift system. The patent application matured into the '467 patent on December 15, 1981.

Immediately after issuance of the '467 patent, Power Lift contacted Wendell Lang by phone and offered him a license alleging that Lang Tools was infringing the '467 patent.

Lang refused the license offer, stating "before he would pay [Power Lift] a nickel, he'd see [Power Lift] in the courthouse," and decided not to stop production of its lift system.

In response, Power Lift filed suit on December 24, 1981, 9 days after the issuance of the '467 patent.

The instructions to the jury on willfulness were in part as follows:

> Infringement or active inducement of infringement of a patent is willful when it is done deliberately and intentionally, and with knowledge of the patent. Copying of an invention covered by a patent application, if such copying continues after the existence of a patent is made known, is evidence of willfulness. However, infringement or active inducement of infringement is not willful if it is done with a good faith belief that the patent is either invalid or not infringed.

> The burden is on Power Lift to show willfulness by clear and convincing evidence.

> Your findings will be entered as answers to the questions on the Verdict Form which you will be provided.

The Verdict Form read in part as follows:
> 1.A. . . .
> Do you find by clear and convincing evidence that Lang Tools, Inc.'s infringement was willful?

The jury found in the affirmative.

Lang, in his brief, argues that "[T]hese facts are similar to those which this Court found did not constitute willful conduct" in *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 224 USPQ 418 (Fed.Cir. 1985).

In *State*, State filed a patent application on its water heater. It then introduced its water heater to the market prior to August 1, 1978, with accompanying literature stating "Patent Applied For." Smith, a competitor of State, obtained, carefully examined, tested, and designed a similar water heater which it introduced into the market by April 1981. State reacted by filing a new patent application, claiming an improvement over its previous water heater, with claims drafted to cover the Smith device. The patent issued on April 28, 1981, and State commenced suit 22 days later, which was the first notice Smith had of the actual existence of a patent.

In reversing the finding of willfulness, this court stated, "[i]n order to willfully infringe *a patent*, the patent must exist and one must have knowledge of it." (Emphasis in the original.) This requirement for knowledge of the existence of a patent was included in the charge to the jury, reproduced supra.

■ The difference between this case and *Smith* is that Smith's first notice of the existence of the patent came with the filing of the infringement suit against it. Here, Lang had knowledge of the existence of the patent the day it issued. Although the infringement suit was filed 9 days later, we agree with the jury's conclusion that Lang's decision to continue production after notice was clear and convincing evidence of willfulness.

### Attorney Fees

■ The trial judge awarded Power Lift attorney fees and costs from both Lang Tools and Lang, jointly and severally, stating: "The Court finds that the activities of the Defendants are such as to make it grossly unfair for the Plaintiff to sustain the expense of counsel."

Lang has failed to persuade us that the jury's finding of willfulness and the judge's award of attorney fees is clear error. Accordingly, the district court's award of punitive damages and attorney fees under 35 U.S.C. § 285 is affirmed.

*Conclusion*

The judgment of the district court is *affirmed* in all respects.

AFFIRMED.