**SYMBOL TECHNOLOGIES,
INC., Plaintiff,**

v.

**METROLOGIC INSTRUMENTS,
INC. and C. Harry Knowles,
Defendants.**

Civ. A. Nos. 88–0461, 88–4686.

United States District Court,
D. New Jersey.

Aug. 8, 1991.

Sprung Horn Kramer & Woods by Arnold Sprung, Nathaniel D. Kramer and Ira J. Schaefer, Tarrytown, N.Y., and Brown & Connery by Warren W. Faulk, Westmont, N.J., for plaintiff.

Hopgood Calimafde Kalil Blaustein & Judlowe by Stephen B. Judlowe, Francis J. Murphy and William A. Alper, New York City, and Max Goldman, Cherry Hill, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

Presently before the court, in Civil Action No. 88–0461, are plaintiff's motion for partial summary judgment on the issue of patent validity, plaintiff's motion for partial summary judgment on the issue of infringement, and defendant's motion for summary judgment based on the equitable doctrine of estoppel.[1]

## I. FACTS AND PROCEDURE

Plaintiff, Symbol Technologies Inc. ("Symbol"), is a corporation organized under the laws of the State of Delaware with its principal place of business in New York State. Plaintiff manufactures and sells laser bar code scanners. Laser scanners are devices which, through the use of light sensitive optics and compact helium-neon based or solid-state infra-red (visible light diode) lasers, read and discern an analogue bar code pattern which contains information about the items on which they are imprinted.[2]

---

1. Two other related actions are before this court involving the same parties but different patents. Civil Action No. 88–4686 has been consolidated with this action. A motion for summary judgment in Civil Action No. 90–5053 will be resolved at a later date.

2. The bar code patterns are the small, rectangular arrays of dark, vertical lines of varying widths alternating with contrasting spaces which are found, for example, on most prepackaged items sold in supermarkets.

Defendant, Metrologic Instruments Inc. ("Metrologic"), is a New Jersey corporation that also engages in the manufacture and sale of laser scanners. Defendant C. Harry Knowles ("Knowles") has been the sole owner and President of Metrologic since February 10, 1986, and serves as one of three members on Metrologic's Board of Directors.

On February 29, 1980, plaintiff filed an application with the Patent and Trademark Office for a patent to cover a hand-held laser scanner which it developed and produced. During that period, Metrologic was developing its own version of the hand-held laser scanner. By 1982, Metrologic had developed its Model 190 hand-held laser scanner and had reached an agreement with NCR for NCR to incorporate it in "point of sale" devices it sold.

In November of 1982, Symbol suggested to NCR that the hand-held laser scanners NCR was purchasing from Metrologic infringed one or more claims in a patent application Symbol had on file with the Patent and Trademark Office. NCR promptly notified Metrologic of Symbol's claim. After consulting its patent counsel, Metrologic concluded that Symbol would be unable to obtain a valid, enforceable patent with such broad claims covering hand-held, trigger operated laser scanners and that Metrologic's MH–190 scanner would not infringe Symbol's patents, once issued. Nevertheless, Metrologic and Symbol met on several occasions to discuss Metrologic's hand-held laser scanners, the claims of the pending application, and the possibility of various business arrangements between Symbol and Metrologic. The discussions, however, did not result in any agreement between Symbol and Metrologic with respect to the patent applications on file with the Patent and Trademark Office.

On June 7, 1983, the Patent and Trademark Office issued United States Patent No. 4,387,297 (the " '297 patent") to plaintiff. Re-examination of the '297 patent was completed on December 16, 1983. Patent '297 covers the basic invention:

a laser scanning system for reading bar code symbols, a light weight easy-to-ma-nipulate laser scanning head normally supportable only by a user throughout the reading of the symbols ...

To read a bar code, a gun-shaped device is aimed at the bar code and a trigger is squeezed. Laser scanners eliminate many of the problems associated with non-laser forms of scanners, such as light pens or wands, and allow minimally trained personnel to read bar codes quickly and accurately.

The second patent at issue, United States Patent No. 4,593,186 (the " '186 patent"), was issued to plaintiff on June 3, 1986. Patent '186 is a division of the '297 patent. The patent is generally directed to a combination of object sensing, scanning and decoding, and specifically to the idea of an automatic termination of the scanning process.

In January of 1984, after the issuance of the '297 patent, plaintiff sued Spectra Physics, a California based corporation, for patent infringement. *Symbol Technologies, Inc. v. Spectra Physics*, No. C–84–20051, (N.D.Ca. filed Jan. 27, 1984). Plaintiff notified Metrologic, who was manufacturing and marketing the MH–190 hand-held laser scanners, that Symbol would determine its future actions based on the outcome of the liability phase of the Spectra Physics suit. The Spectra Physics suit, however, was resolved by a Consent Judgment on January 6, 1986.

On August 13, 1985, due to the poor sales of defendant's MH–190 scanners, Metrologic declared bankruptcy under Chapter 11 and submitted a plan of reorganization. Metrologic's plan of reorganization was confirmed by the bankruptcy court on February 11, 1986. At the time of the settlement of the Spectra Physics suit, Metrologic was still in bankruptcy, operating as a debtor in possession.

Plaintiff continued to enforce its patent against other infringers. On November 14, 1986, plaintiff sued Opticon, Inc., a subsidiary of the Japanese based Opto Electronics Co. Ltd. (referred to collectively as "Opticon"), for patent infringement. *Symbol Technologies, Inc. v. Opticon, Inc.*, No. 86–8736, (S.D.N.Y.). During the course of this

suit, Symbol subpoenaed Knowles to testify at the Opticon trial. Although Metrologic and Knowles were not parties in the Opticon suit, Knowles testified for two days on direct examination on behalf of Opticon and for seven days on cross examination by Symbol. Knowles also voluntarily submitted voluminous Metrologic records to Opticon to assist in their defense and even materially altered an earlier laser scanner in an attempt to convince the court that Symbol's patent was invalid due to prior art. In *Opticon*, the court held that Opticon did in fact infringe plaintiff's patents and that plaintiff's '297 and '186 patents were valid and enforceable. *Symbol Technologies, Inc. v. Opticon, Inc.*, No. 86–8736, Slip Op. at 2, 1990 WL 58887, 1990 U.S.Dist. Lexis 5186, 17 U.S.P.Q.2d (BNA) 1737 (S.D.N.Y. May 3, 1990). The decision was affirmed on appeal by the Federal Circuit. *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 19 U.S.P.Q.2d (BNA) 1241 (Fed.Cir.1991).

In the meantime, defendant Metrologic had obtained refinancing and had emerged out of bankruptcy. In the second half of 1987, defendant Metrologic began making and selling a new series of hand-held laser scanners known as the '90 Series. In fact, Knowles personally conceived of the Series '90 scanners. He then assembled and headed a team in May of 1987 to develop what resulted in the MH–290 scanner, one of the objects of the present infringement suit. Additionally, Knowles personally solicited potential customers and discussed the scanners with them.

On January 26, 1988, plaintiff commenced this suit, Civil Action No. 88–0461, against Metrologic and Knowles alleging that Metrologic's Series '90 laser scanners infringed two of plaintiff's patents relating to laser scanners: patents '297 and '186. Defendants move for summary judgment based on estoppel, arguing that Symbol should be estopped from bringing this action since it knew of Metrologic's hand-held laser scanner development in 1982, but did not file this suit until January of 1988 after Metrologic had incurred substantial expense in developing its product lines. Defendants contend that Metrologic reason-

ably relied on Symbol's silence to conclude that Symbol would not bring an action for patent infringement against them.

Plaintiff moves for partial summary judgment on the issue of patent validity on the '297 and '186 patents. Plaintiff argues that Metrologic and Knowles should be issue precluded from litigating the validity of the '297 and '186 patents as they played an active role in the litigation of the *Opticon* matter and the district court upheld the validity of those patents in *Opticon*. Plaintiff also brings a motion for partial summary judgment on the issue of infringement against Metrologic and Knowles. Metrologic concedes its infringement if the patents are found to be valid, but Knowles contests it. Plaintiff contends that since undisputed facts establish that Knowles committed the tort of patent infringement, summary judgment on the issue of infringement should be entered in its favor against Knowles.

Since plaintiff's partial summary judgment motions are relevant only if the court concludes that plaintiff should not be estopped from bringing this suit, the court will first address defendants' summary judgment motion.

## II. DISCUSSION

### A. *Summary Judgment Standard*

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The

threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The standard for partial summary judgment on an issue is equivalent to the standard for summary judgment.

## B. *Estoppel*

Defendants Metrologic and Knowles move for summary judgment on the issue of equitable estoppel. Metrologic contends that Symbol should be estopped from bringing this infringement action since Symbol knew of defendants' development of hand-held laser scanners as early as 1982, but did not file this suit until January of 1988 after Metrologic had incurred substantial expense. Symbol asserts that the elements of estoppel are lacking in this case; Symbol argues that it regularly told Metrologic that it intended to enforce its patents and brought this suit against Metrologic promptly after it came out with a new gun-shaped, hand-held laser scanner, the MH–290.

Estoppel is an equitable doctrine enforced in patent cases because "the federal patent statutes prescribe no specific period of limitations for a patentee's initiation of an infringement suit." *Studiengesellschaft Kohle mbH v. Dart Industries*, 549 F.Supp. 716, 754 (D.N.J.1982). The appropriateness of the defense will be determined in each individual case under its particular facts and circumstances. *Wayne–Gossard Corp. v. Sondra, Inc.*, 434 F.Supp. 1340, 1361 (E.D.Pa.1977), *aff'd*, 579 F.2d 41 (3d Cir.1978). Furthermore, the decision regarding the applicability of estoppel rests predominantly with the trial judge in the exercise of his or her sound discretion. *See Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315 (5th Cir.) *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980).

It is well settled that a defendant asserting estoppel in a patent case must prove four elements: (1) unreasonable and inexcusable delay in filing suit; (2) prejudice to the alleged infringer; (3) affirmative conduct by the patentee inducing the belief that it abandoned its claims against the alleged infringer; and (4) detrimental reliance by the alleged infringer. *Jamesbury Corp. v. Litton Indus. Products, Inc.*, 839 F.2d 1544, 1553 (Fed.Cir.1988).

The burden of proof in an estoppel defense rests squarely on the alleged infringer. *Jamesbury*, 839 F.2d at 1554. Furthermore, "[w]here the moving party has the burden of proof on a defense, it must show on summary judgment that the undisputed facts establish every element of that defense." *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1461 (Fed.Cir.1990). The court will consider whether the defendants have established that no genuine issue of material fact remains as to each of the four factors necessary to establish an estoppel defense.

### 1. Unreasonable and Inexcusable Delay in Filing Suit

Metrologic argues that Symbol unreasonably delayed commencement of this

action since Symbol first asserted its claim that Metrologic scanners infringed the '297 patent in November of 1982 and yet did not bring this suit until February of 1988, a period they characterize as "nearly six years."[3] Plaintiff contends that there was no unreasonable delay in the commencement of this action. Plaintiff points to the decision in *Meyers*, 912 F.2d at 1462, to assert that the period of an alleged delay cannot commence before the issuance of a patent. Plaintiff argues that since the '297 patent was issued in 1983, only four and a half years before commencement of this suit, and the '186 patent was issued only one and a half years before suit, the delay was not unreasonable. Plaintiff's statement of the law, however, is incorrect. A closer reading of the decision in *Meyers* reveals that the rule applies to laches and not to estoppel. "[L]ike infringement, laches does not begin until the patent issues." *Meyers*, 912 F.2d at 1462.[4]

The calculation of the delay period for laches and estoppel are not necessarily alike. Although no formula exists for determining the start of the delay period, the courts have generally stated that "[w]ith estoppel, delay is measured from the time of the misrepresentation or the beginning of the misleading silence." *Jamesbury*, 839 F.2d at 1554.

Defendants argue that the misleading silence began in November of 1982 when Symbol allegedly "threatened" NCR, Metrologic's largest customer. To support their argument, defendants point to a letter written by Alan Israel, patent counsel for Symbol, and addressed to Jerome Swartz, Chairman of Symbol. In the letter, Alan Israel stated that, "In my opinion, anyone attempting to design a practical hand-held trigger-operated laser scanning head will be hard-pressed to avoid infringing this very broad claim 1." (Defendants' Exhibit

D). Although the letter was not addressed to NCR, a photocopy was shown to them.

After evaluating the content of the letter, the court finds that a genuine issue of material fact remains as to whether the letter constituted a "threat" or was misleading enough to commence the delay period. The letter did not threaten immediate legal action, or, for that matter, any legal action at all. In fact, the letter reads merely as a notice of possible future infringement. Furthermore, the letter was not addressed to Metrologic. Metrologic recognized this fact as late as 1987 when Metrologic's own counsel stated, "Symbol has not notified Metrologic that it deems any of Metrologic's devices to infringe its patents." (Plaintiff's Exhibit No. 12).

Even if the "misleading silence" began at this time, it would have occurred only five years and two months before the commencement of this action. In the absence of an express agreement not to sue, the courts have overwhelmingly denied estoppel defenses where the delay was less than six years. *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1571 (Fed.Cir.1987) (although the delay was over six years, the court reversed a finding of estoppel).

In addition, evidence contrary to Metrologic's interpretation of the Israel letter exists, which raises a genuine issue of material fact as to whether Symbol should be estopped. Metrologic, due to the poor sale of its MH–190 scanners, filed for bankruptcy in 1985. Because of Metrologic's financial position, it was not a competitive threat until it introduced its MH–290 hand-held scanners in 1987, one year prior to this lawsuit. This evidence strongly supports Symbol's contention that a lawsuit against Metrologic during the bankruptcy period was not worth the large financial resources required to commence and maintain a pat-

---

**3.** In fact, Symbol brought this infringement action against Metrologic on January 26, 1988. The court notes that the period from the alleged "threat" to commencement of suit is more accurately five years and two months.

**4.** Estoppel and the related defense of laches are often asserted together, but there exists numerous differences between the law of estoppel and

the law of laches. For example, a presumption that after a six year time period the burden shifts to plaintiff to show the reasonableness of the delay applies to laches but not to estoppel. It does not seem that defendant has raised a laches argument in this motion. Hence, the court will consider only arguments concerning estoppel.

ent infringement suit, raising a genuine issue of fact for trial on the issue of estoppel.

Defendants have failed to present any undisputed facts establishing the delay as unreasonable and inexcusable; therefore, the court cannot grant summary judgment on the issue of estoppel. While the court's determination on this issue alone is dispositive of the motion, the court will also consider the other elements of estoppe

### 2. Affirmative Conduct by Patentee

■ Defendants assert that in February of 1984, Symbol advised defendants of its suit against Spectra–Physics, a large competitor based on the West Coast, and stated that it would "use the results as a guideline in connection with the hand held laser scanning devices of all other manufacturers." (Defendants' Exhibit H). Metrologic asserts that from that time to the commencement of this action, a period of four years, Symbol made no effort to notify Metrologic of its position with regard to defendant's alleged infringement of the '297 (and later the '186) patent. By keeping silent, defendants allege that Symbol failed to meet its obligation to inform defendants of their intent after the Spectra–Physics suit. Lastly, Metrologic alleges that Symbol's silence amounted to bad faith since Symbol knew that defendant would incur expenses on the reliance of not being sued for infringement.

In its opposition brief, plaintiff contends that there was never a threat of immediate suit. In fact, Symbol alleges that it never gave Metrologic a written notice of infringement until the commencement of this present suit.

The doctrine of equitable estoppel "at least requires representations or conduct which justify an inference of abandonment of the patent claim or that the plaintiff has induced the infringer to believe that its business would be unmolested." *TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 350, 201 U.S.P.Q. 433, 436 (6th Cir.1979). Silence alone is not normally sufficient to satisfy the affirmative conduct requirement of estoppel. "For silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to 'bad faith.'" *TWM Mfg. Co.*, 592 F.2d at 350.

In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time. *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.1975) (plaintiff threatened immediate suit if defendant failed to reply within twenty days). No such threats were present here. Symbol's periods of silence did not follow any communication indicating that it would take immediate action, which if not followed up might indicate that it had dropped its infringement claim. As the court stated in *Meyers*, "[a] suggestion of infringement followed by five and a half years of silence is not sufficient affirmative conduct to induce a belief that the patentee has abandoned its claim." *Meyers*, 912 F.2d at 1462–63.

These communications clearly put into dispute Metrologic's contention that Symbol mislead it into believing that Symbol did not intend to enforce its patent rights. In one letter between Symbol and Metrologic, Symbol stated, "[o]ur company holds a number of patents which it believes are meritorious and which it intends to enforce." (Plaintiff's Exhibit No. 5). Because of these communications and Knowles' involvement in the *Opticon* suit, a genuine issue is raised, precluding the entry of summary judgment.

In addition, defendants allege that in 1987, during a conversation between Martino, president of Symbol, and Knowles, Martino stated that Symbol was concerned with competition from the Japanese producer, Opticon, and that Symbol was not interested in a lawsuit against Metrologic. This allegation, however, is in dispute. Martino stated in his deposition that he had spoken to Knowles at a trade show and had mentioned Symbol's concern over competition from Opticon. He refutes, however, any allegation that he had stated or implied

that Symbol was not interested in enforcing its patent against Metrologic. Because defendants' allegation is in dispute, it cannot serve as a basis for granting summary judgment.

■ Metrologic also argues that it reasonably concluded that Symbol did not intend to sue it since Symbol promptly commenced infringement actions against Spectra–Physics and Opticon while not bringing an action against Metrologic. The courts have consistently rejected such reasoning. In *Jamesbury*, the court stated that the "high cost of patent litigation and the comparatively small amounts recoverable from each infringer justify not requiring the patent owner to sue all infringers at the same time." *Jamesbury*, 839 F.2d at 1553.

■ Defendants also allege "bad faith" silence. Defendants argue that a memorandum to the file written by Swartz, Symbol's Chairman, proves that Symbol knew that failure to pursue its patent claims promptly would lead Metrologic to mistakenly believe that it would not be sued and would encourage it to invest in the development of other hand-held laser scanners. The memorandum, written on June 6, 1984, documents the advice given to Swartz by Seymour Blackman, an occasional patent advisor for Symbol. The memorandum states that "Metrologic/NCR is the ideal combination to sue in New Jersey." It goes on to state:

> Seymour, from a business point of view, is then basically in agreement with Nap's view on an initial business blitz when dollar and psychic expenditure/commitment is at a relative low compared to 1–2 years upstream, when the positions will greatly harden and flexibility/opportunities may disappear.

Defendants contend that this letter proves that the silence was calculated and in "bad faith."

The court, however, finds that there are other reasonable interpretations of this memorandum. The memorandum never suggests that Symbol should intentionally postpone an infringement action against Metrologic in order to mislead them. Given its context, the paragraph can be read to support the interpretation that licensing arrangements would be easier in June of 1984 before potential infringers spend additional time and money to develop their own hand-held laser scanners. This alternate interpretation would suggest that the memorandum encourages prompt action against infringers before their positions become "inflexible". Since the memorandum can be interpreted in a variety of ways, it does not conclusively prove that Symbol's delay was calculated to mislead Metrologic or to encourage Metrologic's investment in developing its own hand-held laser scanners. Contrary to defendants assertion, the memorandum, without more, does not establish that no genuine issue of material fact exists that Symbol's delay was either intentional or in "bad faith."

The record does not disclose any undisputed misrepresentation, affirmative acts of misconduct or intentionally misleading silence by the plaintiff to justify defendants' belief that plaintiff had abandoned its infringement claims against the defendants. Since "[s]uch findings are necessary in order to establish estoppel," summary judgment cannot be granted. *TWM Mfg. Co.*, 592 F.2d at 350.

3. Prejudice to the Infringer

■ Defendants assert that in reliance on the plaintiffs' silence they incurred debt and made investments in plant, equipment and people. They state that this is sufficient prejudice to satisfy that requirement of the estoppel doctrine. *Jamesbury*, 839 F.2d at 1554. Plaintiff states that defendants were not prejudiced since the production of the MH–190 prior to commencement of this suit drove defendants into bankruptcy. Furthermore, plaintiff states that defendants went ahead with the production of the MH–290, which is the direct cause of this infringement action, even though they were advised by their counsel of a "significant" risk of suit.

The courts have held that "in light of the severity of the result of a finding of estoppel, a court should not lightly presume injury to the party raising the defense." *Jamesbury*, 839 F.2d at 1554. Although

the Federal Circuit stated in *Jamesbury* that investments are sufficient evidence of material prejudice, the court noted that the infringer had changed his position and had suffered material prejudice in reliance on the delay. *Jamesbury*, 839 F.2d at 1554 (defendant testified that he invested money into his business rather than selling it on reliance upon plaintiff's representations). Here, defendants have failed to show how they have been prejudiced by the plaintiff's delay other than by making conclusory statements about investments in time and energy.

In a recent decision, the court stated that "conclusory averments of prejudice are not sufficient to meet that element of the defense." *Meyers*, 912 F.2d at 1463. Metrologic has not shown any connection between its activities after receiving notice of the Spectra–Physics suit and Symbol's silence. In fact, there is evidence that Metrologic was aware of the risk of lawsuit prior to its introduction of the MH–290. In a confidential opinion of counsel to Metrologic, the counsel stated, "[i]n view of the foregoing, it is our view that the risk of litigation is significant, particularly if Metrologic introduces its MS 290 [MH–290] portable compact laser scanner." [5] (Plaintiff's Exhibit No. 12). To satisfy the prejudice element of the estoppel defense, there "must be material prejudice suffered by the infringer as a result of the delay, not as a result of the infringer's business decisions or willingness to gamble that the patentee will never sue." *Meyers*, 912 F.2d at 1463. Metrologic has failed to demonstrate that there is no genuine issue of material fact as to the extent and nature of the prejudice and that the prejudice was caused by the plaintiff's delay; therefore, the court has an additional reason to deny Metrologic's summary judgment motion.

### 4. Reliance by the Infringer

In their brief, defendants assert that they relied to their detriment on Symbol's "misleading silence" and its "discus-

sions" with Metrologic. Defendants' own brief, however, raises an issue as to whether they relied more on the advice of their own patent counsel than on Symbol's conduct. For example, Metrologic states in its brief that, "[t]hey received advice from two different patent counsel, Mr. Stein and Mr. Podwil, to the effect that it appeared that Symbol had no interest in suing [Metrologic]." (Defendants' Brief at 20). Reliance on the legal advice of one's own counsel cannot establish estoppel.

Defendants have failed to demonstrate that undisputed facts establish any element of the estoppel defense. The existence of numerous genuine issues of material fact as to whether plaintiff is equitably estopped from asserting patent infringement precludes the entry of summary judgment on this issue. As the court cannot find on the record before it that plaintiff is estopped from bringing this suit for infringement, the court will turn to plaintiff's motions for summary judgment at this time.

### C. *Validity*

Symbol moves for partial summary judgment on the ground that Metrologic and Knowles should be precluded from contesting the validity of the '297 and '186 patents as they were active participants in *Opticon*, in which both patents were found to be valid. Metrologic and Knowles made appearances on behalf of Opticon and produced documentation and other items potentially useful to Opticon's defense during that trial. Symbol here claims that Metrologic and Knowles were in privity with Opticon or "virtually represented" by Opticon in the *Opticon* matter as they provided significant assistance to Opticon in that suit. Plaintiff contends that Metrologic and Knowles should now be issue precluded from contesting the validity of the patents.

"When an issue of fact or law is actually litigated and a determination is essential to the judgment, the determination is conclusive in a subsequent action

---

**5.** Metrologic's MH–290 laser scanners are frequently referred to as MS 290 by the parties. As the names appear to be interchangeable, the court will refer to Metrologic's laser scanner as the MH–290.

between the same parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *NLRB v. Yellow Freight Sys., Inc.*, 930 F.2d 316, 319 (3d Cir.1991); *see also Rider v. Commonwealth of Pa.*, 850 F.2d 982, 989 (3d Cir.), *cert. denied*, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). Where a patent has been declared invalid in a previous proceeding in which the patentee has "had a full and fair chance to litigate the validity of his patent in [the] earlier case," the patentee is issue precluded from attempting to relitigate the patent's validity. *Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). "The *Blonder–Tongue* rule, however, 'is of necessity a one-way street,' 4 D. Chisum, *Patents* § 19.02[2][e], at 19–31 (1986), and does not bar someone charged with infringement from challenging the validity of patent claims that were upheld in a prior infringement suit to which it was not a party." *Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1091 (Fed.Cir.1987); *see Grayson v. McGowan*, 543 F.2d 79, 81 (9th Cir.1976) (under the doctrine of issue preclusion a finding of validity in a prior judgment does not preclude a finding of invalidity in a subsequent lawsuit where the prior determination was made against a party other than the current defendant).

In certain circumstances, a party not named to a prior action may be issue precluded in a subsequent action when it was in privity with a party in the prior action. Privity has been characterized as a relationship where "there was a substantial identity of parties." *Chicago, Rock Island & Pac. Ry. v. Schendel*, 270 U.S. 611, 621, 46 S.Ct. 420, 424, 70 L.Ed. 757 (1926). Such a substantial identity of parties binds one who is not a party of record if he had a sufficient interest and participated in the prior action. *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir.1980) (referring to *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)). "A close relationship [between the party to be bound and the party of record] is a requirement of fairness and may be necessary to provide

due process of law." *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); *see E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir.1990). To meet the requirement of fairness and due process "[t]he courts have recognized that a non-party may be bound if a party is so closely aligned with its interests as to be its 'virtual representative.'" *ITT Rayonier*, 627 F.2d at 1003 (quoting *Aerojet–General Corporation v. Askew*, 511 F.2d 710, 719 (5th Cir.), *reh'g denied*, 423 U.S. 1026, 96 S.Ct. 470, 46 L.Ed.2d 400 (1975)). Such a "virtual relationship" is found where the party in the present suit exercised "control over and interest in the earlier litigation." *United States v. Webber*, 396 F.2d 381, 387 (3d Cir.1968).

The boundaries of the "virtual representation" doctrine are constrained by the dictates of due process. *Bruszewski*, 181 F.2d at 422; *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1175 (5th Cir.1987). Virtual representation should not be found to have occurred without "an express or implied legal relationship" between the named party to the first action and the non-party sought to be bound. *ITT Rayonier*, 627 F.2d at 1003; *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir.1984); *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir.1978).

An example of such a relationship can be found in *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961). In *Schnell*, a contract of sale contained a clause whereby manufacturer "agreed to defend any infringement suits which might be filed against [purchaser] involving the [patented] device and to bear all of the expense thereof, including any recovery." *Schnell*, 365 U.S. at 261, 81 S.Ct. at 559. Issue preclusion was proper in *Schnell* against the manufacturer where the manufacturer was called in to defend a prior suit against a purchaser where the purchaser was the named party. *Schnell*, 365 U.S. at 261, 81 S.Ct. at 559.

A second example of "virtual representation" occurred where two federal governmental organizations, the Environmental Protection Agency and the Department of Ecology, were found to possess "identical [interests] and their involvement sufficiently similar." *ITT Rayonier*, 627 F.2d at 1003.

In the instant case, the facts do not establish that Metrologic or Knowles agreed to control or did in fact control the defense in *Opticon*. In *Opticon*, the involvement of Metrologic and Knowles consisted of testifying on behalf of Opticon, producing documents, participating in depositions (some of which were used at trial) and having an interest in the outcome of the validity of the patents.

The involvement of Metrologic and Knowles cannot be found to rise to the level of involvement found in either *Schnell* or *ITT Rayonier*. Neither Knowles nor Metrologic agreed to indemnify or defend Opticon in any form from a patent infringement suit, nor was there any form of a contractual relationship as in *Schnell*, 365 U.S. at 261, 81 S.Ct. at 559. Neither were there identical interests and similar involvement between Metrologic and Opticon as found between the Environmental Protection Agency and the Department of Ecology as found in *ITT Rayonier*, 627 F.2d at 1003. Metrologic, with Knowles at its helm, is an autonomous corporation operating in the economy for the purpose of making a profit. While it might have similar interests with Opticon in proving the '297 and '186 patents invalid, Metrologic is nevertheless in competition with Opticon and has its own independent and individual agenda for its continued survival and hopeful prosperity. Unless the level of activity rises to that as found in *Schnell* or *ITT Rayonier*, neither privity nor virtual representation can be found to have occurred. Metrologic and Knowles' participation in Opticon was not enough to rise to the level of privity or virtual representation.

From the earlier judgment in *Opticon*, Symbol is merely "provide[d] a bargaining advantage, and a strong argument, even though not binding." *Dicar, Inc. v. L.E. Sauer Machine Co., Inc.*, 530 F.Supp. 1083, 1087 (D.N.J.1982). Metrologic and Knowles are "free to litigate the issue [themselves], and may be able to produce additional prior art to show obviousness," or in some other way show the patents to be invalid. *Dicar, Inc.*, 530 F.Supp. at 1087. Here, as neither Knowles nor Metrologic was virtually represented by Opticon in *Opticon*, the court finds that Metrologic and Knowles are not barred from litigating the validity of the '297 and '186 patents.

### D. *Infringement*

The court now turns its attention to Symbol's motion for partial summary judgment on the issue of infringement. Symbol claims that it is entitled to summary judgment as a matter of law as the undisputed facts demonstrate that Metrologic and Knowles infringed the '297 and '186 patents.[6] Metrologic concedes, assuming that the patents are valid, that with the Series '90 scanners it has infringed: claims 1, 8, 15, 24, 36 and 37 of the '297 patent with their MH–290 scanner; claims 1, 8, 15, 20, 23, 24, 36 and 37 of the '297 patent with both their MH–490 and MH–590 scanners; claims 2, 4–6, 9 and 12–15 of the '186 patent with all three scanners, MH–290, MH–490 and MH–590; and additionally claim 7 of the '186 patent with both the MH–290 and MH–490 scanners. The court, therefore, will enter summary judgment in favor of Symbol against Metrologic as to these claims.

The issue remaining is whether summary judgment should be entered against Knowles on the infringement issue as to the '297 and '186 patents. It is undisputed that Knowles has been the sole owner and President of Metrologic since February 10, 1986, and serves as one of three members

---

**6.** Any holding of infringement is contingent on the underlying patents being held valid. However, for simplicity the discussion will proceed on the assumption that the patents here are valid.

on Metrologic's Board of Directors.[7] In May of 1987, Knowles personally conceived of the Series '90 scanners, assembled and headed a team to develop what resulted in the '290 scanner. Additionally, Knowles personally solicited potential customers and discussed the scanners with them as early as 1983. Knowles was also aware of Symbol's patents well before this current litigation due to his participation in an earlier infringement action on the same patents against another manufacturer in *Opticon*.

Based upon the above mentioned undisputed facts, Symbol seeks to hold Knowles personally liable for infringement under either 35 U.S.C. § 271(a) or (b). The former of these sections concerns direct infringement while the latter concerns inducing infringement.[8] In either case patent infringement is a tort. *Carbice Corp. of Am. v. American Patents Dev. Corp.*, 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819 (1931); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir.1986). The court will first address direct infringement, then inducing infringement.

### 1. Direct Infringement

Section 271(a) reads in relevant part, "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."[9] This language has generally been interpreted to allow a finding of infringement against any entity be it an individual, corporation or otherwise. Even with respect to officers of corporations, it is hornbook law that there is no need to pierce the corporate veil in order to find personal liability. "The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts

of patent infringement." *Orthokinetics*, 806 F.2d at 1579.

It is thoroughly well settled that a person is personally liable for all torts committed by him, consisting in misfeasance ... not withstanding he may have acted as the agent or under directions of another. And this is true to the full extent as to torts committed by the officers or agents of a corporation in the management of its affairs. The fact that the circumstances are such as to render the corporation liable is altogether immaterial. The person injured may hold either liable, and generally the injured person may hold both as joint tort-feasors. Corporate officers are liable for their torts, although committed when acting officially. In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval. This rule does not depend on the same grounds as 'piercing the corporate veil,' that is inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization.

3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1135 at 267 (1986 & Supp.1990) (cases cited) ("W. Fletcher").

Recently in *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed.Cir. 1990), the Federal Circuit appears to have strayed from this well established rule. In *Manville*, the court built upon its own dicta in *Orthokinetics*, where it stated that "[t]o

---

**7.** As President and sole owner of Metrologic, it is Knowles who most directly benefits by any financial success associated with the Series '90 scanners.

**8.** Inducing infringement under § 271(b) should not be confused with contributory infringement under § 271(c). For a discussion of the differences *see Hewlett-Packard Co. v. Bausch & Lomb,*

*Inc.,* 909 F.2d 1464, 1468–69 (Fed.Cir.1990); *see also* 4 D. Chisum, Patents § 17.04[3] starting at 17–46 (1991) ("D. Chisum").

**9.** By admitting infringement of Symbol's patents, Metrologic is admitting direct infringement.

determine whether corporate officers are personally liable for direct infringement under § 271(a) requires invocation of those principles relating to pierce the corporate veil." *Orthokinetics*, 806 F.2d at 1579. No reason was given in support of this argument nor was the holding in *Orthokinetics* based upon piercing the corporate veil. In *Orthokinetics*, defendant Privacek was found to be liable for direct infringement under § 271(a). *Orthokinetics*, 806 F.2d at 1579. The facts established that he was President, sole stockholder and had selected the Board of Directors of the infringing corporation.[10] *Orthokinetics*, 806 F.2d at 1578–79. In addition, Privacek was one of three people responsible for the design and production of the infringing device, and he was found to be in a position to benefit directly from the patent infringement. *Orthokinetics*, 806 F.2d at 1579.

The Federal Circuit cited the *Orthokinetics* dicta in *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 596 (Fed.Cir. 1988) (*"Worthington"*). In *Worthington*, which involved the potential liability of a parent corporation for the actions of its half owned corporate subsidiary, the court held that it would have to disregard the two corporations as distinct and separate entities in order to find the parent corporation liable for the actions of the subsidiary. *Worthington*, 849 F.2d at 596. Liability under § 271(a) was not found due to the determination that the corporations were distinct entities. *Worthington*, 849 F.2d at 596–97.

The *Manville* decision then combined the dicta of *Orthokinetics* and the language in *Worthington*, seemingly creating a new standard for § 271(a) which necessitates piercing the corporate veil in order to find an officer of a corporation personally liable

for patent infringement. *Manville*, 917 F.2d at 552–53. In support of this position the court cited *Zubik v. Zubik*, 384 F.2d 267, 270 (3d Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968), and Fletcher's treatise. *Manville*, 917 F.2d at 552–53. After examining these sources, the court concludes that neither requires piercing the corporate veil for imposition of liability under § 271(a), but merely explains the general standard for piercing the corporate veil. The *Manville* court provides no reason for departing from the generally settled law concerning holding officers of corporations liable for patent infringement.[11]

It is not clear that the Federal Circuit intended in *Manville* to overturn the long-standing precedent that a corporate officer can be liable for direct infringement without piercing the corporate veil. If *Manville* does establish a new rule, it is not binding on this court as the Federal Circuit follows the rule that "prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc.*" *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988). There has been no overturning *en banc* of the previous standard of determining personal liability for infringement nor was there any reason given by the *Manville* court for any overturning of the previous standard in *Manville*. "Where there is direct conflict, the precedential decision is the first." *Newell*, 864 F.2d at 765. Therefore, until changed by an *en banc* decision, the court finds that the long-established rule that a corporate officer can be liable for direct infringement without piercing the corporate veil remains in effect. This standard was enunciated in

---

**10.** Two other individuals were also found to have personally infringed along with Privacek, one directly and the second contributorily.

**11.** The above discussion does not mean to imply that piercing the corporate veil is not a sufficient means of holding one liable for direct infringement but merely that piercing the corporate veil is not necessary for such a finding. In *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336, 348 (7th Cir.1966), the court determined that it was proper to hold a corpo-

rate officer liable for patent infringement as the corporate veil was pierced. Such individual was President, director and majority shareholder of the corporation and had participated in the design of the infringing device and preparation of the sales bulletin. *Rex Chainbelt*, 363 F.2d at 348. The corporation was found to be his alter ego and hence liability was found proper under § 271(a). *Rex Chainbelt*, 363 F.2d at 348.

*Orthokinetics* that "[i]nfringement is a tort, and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics*, 806 F.2d at 1579; *see* 3A W. Fletcher § 1135 at 267.

An example of a case where an individual was found jointly liable with a corporation for direct infringement under § 271(a) is *A. Stucki Co. v. Schwam*, 634 F.Supp. 259 (E.D.Pa.), *modified on other grounds*, 638 F.Supp. 1257 (E.D.Pa.1986) (hereinafter "*Schwam*"). Schwam was President, half owner and one of three directors of a corporation. *Schwam*, 634 F.Supp. at 265. Additionally, he was responsible for the design, manufacture and sale of the infringing device. *Schwam*, 634 F.Supp. at 265. The court in *Schwam* found that "[t]his level of participation is clearly sufficient to justify imposing joint liability for the infringement upon Mr. Schwam." *Schwam*, 634 F.Supp. at 265.

In the instant case, the undisputed facts are that Knowles served as President, was the sole owner, and a member of the Board of Directors of Metrologic, and was the designer, manufacturer and seller of the Series '90 scanners. Knowles involvement in the infringing activity closely mirrors Privacek's activities in *Orthokinetics* and Schwam's activities in *Schwam*. After examining the undisputed facts, the court concludes that Knowles is personally liable for direct infringement on the same claims as Metrologic has conceded infringement as a matter of law. As a result, Symbol's summary judgment motion on this issue will be granted.

2. Inducing Infringement

▇▇▇ Section 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Commentary suggests that a broad reading of § 271(b) should be taken. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481

(Fed.Cir.1985). Such a broad view "may include liability of corporate officials who actively aid and abet their corporation's infringements." *Power Lift*, 774 F.2d at 481. Personal liability under § 271(b) for inducing infringement may be found when corporate officers actively engaged in assisting their corporation's infringement regardless of whether circumstances justify a court piercing the corporate veil. *Orthokinetics*, 806 F.2d at 1578–79; *see also Power Lift*, 774 F.2d at 481.

▇▇▇ In order to find active inducement under § 271(b), intent to aid and abet must first be proven. *Amicus, Inc. v. Alosi*, 723 F.Supp. 429, 431 (N.D.Cal.1989). A requisite step of proving intent to aid or abet requires "showing that the conduct being induced constitutes direct infringement." 4 D. Chisum § 17.04[1] at 17–44.2; *see also Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987). In the instant case, direct infringement under § 271(a) has already been found against Metrologic, therefore this requirement for finding inducing infringement under § 271(b) is satisfied.

▇▇▇ Although not explicitly stated in the statute, the second step of proving intent to aid and abet is showing that an alleged infringer "*knowingly* aid[ed] and abet[ted] another's direct infringement."[12] *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988) (emphasis in original); *see also* 4 D. Chisum § 17.04[2] at 17–45. "Knowingly is not equated with a specific intent to infringe." 3 P. Rosenberg, Patent Law Fundamentals § 17.02[2][a] at 17–25 (1991). Generally, knowledge has been construed as knowledge of an infringement controversy. *Aro Mfg. Co., Inc. v. Vertible Top Replacement Co., Inc.*, 377 U.S. 476, 514, 84 S.Ct. 1526, 1546, 12 L.Ed.2d 457 (1964)

---

12. "Case law makes clear that infringement of a patent does not require willful or deliberate attempt to infringe on part of infringer." *Amicus*, 723 F.Supp. at 431.

(White, J., concurring);[13] *see also Orthokinetics*, 806 F.2d at 1579 (with respect to knowledge the acts of corporate officials need not "rise to the level recognized by law as constituting willful infringement before they can be liable for infringement by their corporation.").[14] However, "[c]orporate officers are presumably aware of what they are doing, and in that sense can be said to have acted 'willfully.'" *Orthokinetics*, 806 F.2d at 1579. Willfully inducing infringement is certainly sufficient for finding infringement under § 271(b), but it is not necessary for such finding. *Schwam*, 634 F.Supp. at 265.

▮ This second step of proving one knowingly induced infringement need not be proven by direct evidence but may be proven by circumstantial evidence. *Moleculon*, 793 F.2d at 1272; *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d at 668. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Moleculon*, 793 F.2d at 1272 (quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L.Ed.2d 20 (1960)).

▮ An argument put forth by Knowles is that he relied on the advice of counsel that he was not infringing on the '297 and '186 patents and hence did not have the requisite specific intent to infringe. As stated earlier, specific intent to infringe is not necessary for a finding of inducing infringement. 3 P. Rosenberg § 17.02[2][a] at 17–25. Advice of counsel should be sought "[w]hen a potential infringer has actual notice of another's patent rights [as] he has the duty to 'exercise due care to determine whether or not he is infringing.'" *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed.Cir.1986). Such advice may be relevant in determining whether infringement was willful for pur-

pose of increased damages under 35 U.S.C. § 284. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir.1983); *Schwam*, 634 F.Supp. at 265. Advice of counsel has no relevance here in determining whether Knowles induced infringement under § 271(b).

In the past, conduct including licensing, repair and maintenance, instruction and advertising, design and assisting in manufacture have been sufficient to hold one liable for including infringement under § 271(b). 4 D. Chisum § 17.04[4] at 17–49 (cases cited). "Exertion of control of a corporation's manufacture of infringing products is evidence of infringement." *Amicus*, 723 F.Supp. at 431.

In *Power Lift*, defendant Lang was President, founder, majority owner and director of the corporation. *Power Lift*, 774 F.2d at 480. As such, a jury's finding that he was guilty of inducing infringement was upheld. *Power Lift*, 774 F.2d at 481. A second example where a corporate officer was held liable for inducing infringement under § 271(b) is *Chisum v. Brewco Sales and Mfg., Inc.*, 726 F.Supp. 1499, 1513 (W.D.Ky.1989) (hereinafter *"Brewco"*). Defendant Brewer was President, principal stockholder and responsible for the corporation's "total management and operation." *Brewco*, 726 F.Supp. at 1501. In addition, he designed the infringing devices. *Brewco*, 726 F.Supp. at 1513. At a bench trial, the above actions were considered sufficient to hold Brewer personally liable under § 271(b) for inducing infringement. *Brewco*, 726 F.Supp. at 1513.

▮ The activities of Knowles in presiding over Metrologic as President, sole owner and one of three members on the board of directors, are equivalent to those of the individuals in *Power Lift* and *Brewco*. That such activities allowed Knowles to control production of the infringing products is undisputed. Additionally, as stated

---

**13.** On this matter in *Aro* neither the plurality or dissent could command a majority therefore Justice White's short concurrence dictates the law on this point.

**14.** Note the conflict on this point with: "It must be shown that the defendant possessed specific

intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Manville*, 917 F.2d at 553. This is another area where the court in *Manville* appears to affect a change in the prevailing law.

earlier, Knowles personally conceived of the infringing device and headed a team which he assembled to develop the device. The aggregate of these activities leaves no material fact in dispute and such activities are sufficient to hold Knowles liable for inducing infringement under § 271(b).

Therefore, Symbol's motion for partial summary judgment on the issue of patent infringement is granted with respect to Metrologic under § 271(a) for direct infringement and with respect to Knowles under both § 271(a) for direct infringement and under § 271(b) for inducing infringement.

## III. CONCLUSION

For the reasons stated above, the court will deny defendants' motion for summary judgment based on equitable estoppel, deny plaintiff's motion for partial summary judgment on the issue of patent validity and grant plaintiff's motion for partial summary judgment on the issue of infringement as to defendants Metrologic and Knowles.

An appropriate order will be entered.

### ORDER

This matter having come before the court on the defendants' motion for summary judgment based upon the equitable doctrine of estoppel, plaintiff's motion for partial summary judgment on the issue of patent validity and plaintiff's motion for partial summary judgment on the issue of patent infringement; and

The court having considered the submission of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 8th day of August, 1991, hereby

ORDERED that defendants' motion for summary judgement based upon the equitable doctrine of estoppel is DENIED; and

FURTHER ORDERED that plaintiff's motion for partial summary judgment on the issue of patent validity is DENIED; and

FURTHER ORDERED that plaintiff's motion for partial summary judgment on the issue of patent infringement against Metrologic and Knowles is GRANTED with respect to claims 1, 8, 15, 24, 36 and 37 of the '297 patent with their MH–290 scanner; claims 1, 8, 15, 20, 23, 24, 36 and 37 of the '297 patent with both their MH–490 and MH–590 scanners; claims 2, 4–6, 9 and 12–15 of the '186 patent with all three scanners, MH–290, MH–490 and MH–590; and additionally claim 7 of the '186 patent with both the MH–290 and MH–490 scanners.